UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

------------------------------------------------------------------X

TERRAINE SLIDE,

                Petitioner,

        -against-

WILLIAM LEE,

                Respondent.

**<u>MEMORANDUM AND ORDER</u>**
15-CV-5354 (JMA)

**FILED
CLERK**

6/8/2018 4:59 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

------------------------------------------------------------------X

**APPEARANCES:**

Terraine Slide, <u>pro</u> <u>se</u>
    *Petitioner*

Marion M. Tang, Assistant District Attorney
Alyson Gill, Assistant Attorney General
District Attorney of Suffolk County
200 Center Drive
Riverhead, NY 11901
    *Attorneys For Respondent*

**AZRACK, United States District Judge:**

    Terraine Slide ("Slide"), proceeding <u>pro se</u>, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Slide entered a guilty plea to Manslaughter in the First Degree and was later sentenced to a determinate twenty-five years of imprisonment followed by five years of post-release supervision.

    In the pending petition, Slide asserts a number of grounds for habeas relief; all of which are without merit. Accordingly, Slide's petition is DENIED in its entirety.

# I.  BACKGROUND

The following facts are taken from the petition and the state court record.[1]

As explained in more detail below, after Slide was convicted of Murder in the Second Degree at trial, his conviction was reversed on appeal.  He then pled guilty to Manslaughter in the First Degree.  His plea allocution and the evidence at trial established the following.

On May 8, 2007, Slide entered the home of Carlton Shaw with four co-defendants, one armed with a loaded firearm, with the intent to remove property from the home.  (Plea Tr. 5-6.)  When they first entered the home, Carlton Shaw was inside with his young son.  (Plea Tr. 7.)  After the group took items from the home they fled into nearby woods.  (Plea Tr. 7; People v. Slide, 76 A.D.3d 1106, 1106 (2d Dep't 2010).)  Shortly thereafter, Slide decided to return to the house, taking the loaded firearm with him.  (Plea Tr. 8.)  While walking towards the house, Slide observed Carlton Shaw approaching him; Slide then fired the gun in the direction of Carlton Shaw.  (Plea Tr. 8.)  Carlton Shaw died as a result of Slide's gunshots.  (Plea Tr. 9.)

## A. **The Trial**

On September 4, 2008, following a jury trial, Slide was convicted of Murder in the Second Degree, Burglary in the First Degree, and Criminal Possession of a Weapon in the Second Degree.[2] Slide, 76 A.D.3d at 1107-08.  Slide was sentenced to a term of imprisonment of twenty-five years to life.  (See Judgment, ECF No. 12-10, at 7.)  Following the trial, Slide appealed his conviction and sentence.  The Second Department of the New York State Appellate Division granted Slide's appeal, finding that his guilty verdict may have been affected by trial errors and ordered a new

---

[1] "Plea Tr." refers to the guilty plea transcript, People v. Slide Guilty Plea Tr., May 17, 2011, ECF No. 12-2.  "First Sentencing Tr." refers to the transcript for the August 24, 2011 sentencing proceedings, People v. Slide First Sentencing Tr., Aug. 24, 2011, ECF No. 12-3.  "Second Sentencing Tr." refers to the transcript for the September 6, 2011 sentencing proceedings, People v. Slide Second Sentencing Tr., Sept. 6, 2011, ECF No. 12-4.

[2] Slide's four co-defendants all pled guilty, and three of them testified against Slide at his trial.  (Plea Tr. at 6; People v. Slide, 76 A.D.3d 1106, 1106 (2d Dep't 2010).)  At trial, Slide testified in his own defense.

2

trial.  Id. at 1106-10.  However, the Second Department also concluded that "the evidence was legally sufficient to support the convictions and that the verdict of guilt was not against the weight of the evidence".  Id. at 1110.

## B. The Guilty Plea

On May 17, 2011, Slide entered a plea of guilty to a reduced charge of Manslaughter in the First Degree in violation of New York Penal Law § 125.20.  (See Amend. Pet. at 3, ECF No. 8.)  During his plea allocution, Slide stated he had discussed the plea with his attorney; he understood his plea; he was pleading guilty of his own free will; and he had not been coerced into entering the guilty plea.  (Plea Tr. 4.)  Further, Slide completed a factual allocution, admitting that on May 8, 2007, he went to the home of Carlton Shaw with others to burglarize and rob it.  (Plea Tr. 5.)  Slide stated that during the incident the group left the home and returned later, at which point he was carrying a firearm.  (Plea Tr. 7-8.)  Slide informed the court that he encountered Carlton Shaw in the backyard and shot Carlton Shaw, causing a fatal gunshot wound.  (Plea Tr. 8-9.)

Additionally, at the plea hearing, the court stated the following:

> I've committed myself to be guided by probation.  If after reviewing probation reports, I cannot impose the sentence, a definite sentence of 25 years with five years post-release supervision with credit for time already served, this defendant shall be afforded the opportunity to withdraw the plea.

(Plea Tr. 10.)  Slide's guilty plea was accepted and the matter was adjourned for sentencing.  (Plea Tr. 10-11.)

Prior to sentencing, Slide was interviewed by Probation and a Pre-Sentence Report ("PSR") was generated, which stated in pertinent part:

> [T]he victim, Carlos Shaw, came 'charging' toward them. The
> defendant believed that perhaps he was looking for his son, and he
> noticed the man running at sort of an angle. He was not sure that
> the man saw them, and the defendant said he also started running,
> and 'in the mix', they all panicked and as the defendant ran and spun
> around, the gun went off . . . The defendant described the crime as a
> 'freak accident.' He said he panicked and he had no intention to
> take the man's life.

(See Def.'s App. Div. Br. at 14-15 (quoting PSR at 6).)

On August 24, 2011, the case was called for sentencing. (First Sentencing Tr. 2.) Upon

the court inquiring whether Slide was ready for sentence, Jason Bassett, Esq., the defense

counsel stated:

> Well, that's what I'm trying to determine Judge. I apologize. Judge,
> my client is informing me that attorney Steven Wilutis came and
> saw him last week and represented to Mr. Slide that he could get
> him less – he wants to hire him, that he can get him less time in this
> situation. This is the first time I'm hearing of it and don't know
> what the attorney could possibly be referring to. But I felt compelled
> to put that on the record.

(First Sentencing Tr. 2.) The prosecution stated that they were not aware of Mr. Wilutis being

involved and emphasized that this was the third adjournment of sentencing. (First Sentencing Tr.

2-3.). The court indicated that Mr. Wilutis had not filed a notice of appearance. (First Sentencing

Tr. 2-3.) Then, the court took a brief recess to determine if Mr. Wilutis was available to appear on

the matter. (First Sentencing Tr. 4.) Later that day, the case was recalled; Mr. Wilutis was not

present and defense counsel stated:

> Your Honor, I've made Mr. Slide aware of the situation regarding
> September 6 and that if he is to hire Mr. Wilutis or any other private
> counsel that they need to be retained and here on September 6.

(First Sentencing Tr. 5.) The matter was then adjourned to September 6, 2011 for sentencing.

(First Sentencing Tr. 6.)

4

On September 6, 2011, Mr. Bassett again appeared as defense counsel for Slide and no objections were made to Slide being sentenced:

> The Court: Defendant ready for sentence?
>
> Mr. Bassett: Yes, your Honor.
>
> The Court: Any legal cause why sentence should not now be pronounced?
>
> Mr. Bassett: No, your Honor
>
> * * *
>
> The Court: Defendant wish to make a statement?
>
> Defendant: I have nothing to say.

(Second Sentencing Tr. 2-3.)   Slide was sentenced to a bargained for twenty-five years of incarceration followed by five years of post-release supervision.  (See Amend. Pet. at 3.)

## C. Post-Conviction Proceedings

### 1. The Direct Appeal

Slide, through counsel, appealed his guilty plea to the Second Department of the New York State Appellate Division.  On appeal, Slide argued: (1) the trial court erred by failing to make sufficient inquiries into his guilt; and (2) that his sentence was harsh and excessive.  (See Def.'s App. Br., July 1, 2013, at 1-22, ECF No. 12-5.)[3]  On January 29, 2014, the Second Department affirmed Slide's conviction and sentence.  People v. Slide, 113 A.D.3d 881, 882 (2d Dep't. 2014). The court determined that "the defendant's plea of guilty was knowing, voluntary, and intelligent" and that "the sentence imposed was not excessive."  Id.  On March 21, 2014, the New York Court of Appeals denied Slide's request for leave to appeal.  People v. Slide, 22 N.Y.3d 1159 (2014).

---

[3] The Court uses the pagination assigned by the electronic case filing system for ECF Nos. 12-5; 12-6; 12-7; 12-8,12-9, and 12-10.

### 2. The Section 440.10 Motion

Slide filed a motion pursuant to Section 440.10 of the New York Criminal Procedure Law. (See Def.'s 440.10 Mot., May 12, 2015, at 1-32, ECF No. 12-6.)  In his Section 440.10 motion, Slide argued that:

(1) his "guilty plea was rendered unknowing, unintelligent, and involuntary when the court deprived him of his state and federal constitutional right to counsel of his own choosing";

(2) he was "deprived of his constitutional right to the effective assistance of counsel";

(3) "he was unaware of counsel's potential conflicting interest"; and

(4) "counsel failed to advise [him] of his constitutional right to counsel of his own choosing."

(Id. at 24-32.)

On June 25, 2015, the County Court of Suffolk County denied the Section 440.10 motion in its entirety.  (See Court Order Denying Def.'s 440.10 Mot., June 25, 2015, at 103-04, ECF No. 12-6.)  The County Court stated:

> It is clear to this Court from the record that the defendant's claims that he was denied counsel of his own choosing has no merit.  The defendant was granted ample opportunity to engage the service of Mr. Wilutis or any other attorney he may have desired.  Indeed, the matter was adjourned five times after he entered the plea, from May 17, 2011 to September 6, 2011.  It is also the Court's finding the defendant received the effective assistance of counsel.  Mr. Bassett did indeed negotiate a favorable plea and sentence, especially in light of the prior conviction after trial. . . . The record establishes that defense counsel provided meaningful representation as a whole.

(Id. at 104.)  On August 25, 2015, the Appellate Division, Second Department denied Slide's application for leave to appeal.  (See Order Denying Leave to Appeal Def.'s 440.10 Mot., Aug. 25, 2015, at 37, ECF No. 12-8.)

### 3. The Section 440.20 Motion

In August 2015, Slide filed a motion under Section 440.20 of the New York Criminal Procedure Law. (See Def.'s Mot. to Vacate Sentence, Aug, 20, 2015, at 1-8, ECF No. 12-7.) In the motion, Slide argued that his sentence was illegal and unauthorized as a matter of law. (Id. at 4-8.) On October 5, 2015, the County Court of Suffolk County denied the Section 440.20 motion, stating that the sentence imposed was "valid, authorized and legal." (See Court Order Denying Def.'s 440.20 Mot., Oct. 5, 2015, at 47-48, ECF No. 12-7.) On January 8, 2016, the Appellate Division, Second Department denied Slide's application for leave to appeal. (See Order Denying Leave to Appeal Def.'s 440.20 Mot., Jan. 8, 2016, at 49, ECF No. 12-9.)

### 4. The Instant Petition

On September 9, 2015, Slide filed his first petition under 28 U.S.C. § 2254 seeking habeas corpus relief. (See Pet., ECF No. 1.) The Court found that it was a mixed petition, containing both exhausted and unexhausted claims. See Slide v. Lee, No. 15-CV-5354, 2016 WL 160722, at *2 (E.D.N.Y. Jan. 13, 2016) (determining that Slide's claim that "the sentence imposed was harsh and excessive" was the only unexhausted claim, as the claim was pending before the Supreme Court of Suffolk County at the time Slide filed the first petition.) The Court instructed Slide to "(1) Show Cause why the Court should not dismiss his mixed petition in its entirety; or (2) alternatively, submit an amended petition omitting his unexhausted claim and proceeding with the exhausted claims." Id. at *1. On January 29, 2016, Slide filed a response to the Court's order, stating that both his Section 440.20 motion and his leave to appeal were denied, and as such, all his claims were exhausted. (See Resp. to Order to Show Cause, ECF No. 7.) Subsequently, Slide filed an amended petition seeking habeas corpus relief. (See Amend. Pet.)

Slide asserts the following grounds for relief:

(1) the trial court erred by failing to make sufficient inquiries into Slide's guilt (the "inquiries into Slide's guilt" claim);

(2) his sentence was harsh and excessive (the "harsh and excessive sentence" claim);

(3) his guilty plea was unknowing, unintelligent, and involuntary (the "involuntary guilty plea" claim);

(4) he was deprived effective assistance of counsel (the "ineffective assistance of counsel" claim);

(5) at the time of the guilty plea he was unaware of counsel's potential conflict of interest (the "conflict of interest" claim); and

(6) counsel failed to advise petitioner of his constitutional right to counsel of his own choosing (the "counsel of own choosing" claim).  (See Amend. Pet. at 6-16.)

## II. DISCUSSION

### A. Standards of Review

#### 1. Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners."  Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring).  Under AEDPA, a prisoner may file a habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  To make that showing, the petitioner must demonstrate: (1) the exhaustion of state remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions.  See id. § 2254.

#### 2. Procedural Default

A federal court cannot review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the

8

judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the petitioner failed to abide by a state procedural rule." Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012). This procedural bar applies even if the state court addressed a claim's merits in the alternative, but decided that claim on independent procedural grounds. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an alternative holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original). When a state court has dismissed a claim based on a state procedural rule, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions discussed below.

To overcome a procedural bar, a petitioner must show either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To demonstrate cause, a petitioner must put forth that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule": for example, that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials … made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). A petitioner may also satisfy the cause requirement by demonstrating that his attorney's failure to comply with state procedural rules denied him constitutionally adequate representation. See Tavarez v. Larkin, 814 F.3d 644, 650

(2d Cir. 2016), cert. denied, 137 S.Ct. 106 (2016); Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999).

As for the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petition to establish cause) not only "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage…" United States v. Frady, 456 U.S. 152, 170 (1982).

Even if a petitioner cannot establish cause and prejudice, a federal court may excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result.  For example, a petitioner can overcome a procedural bar by showing "that he is actually innocent of the crime for which he has been convicted."  Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)).  To prevail, the petitioner must put forth "new reliable evidence … that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

### 3. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.SC. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring). A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id. at 409–10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)). This standard is "difficult to meet," and for good reason. White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Metrish v. Lancaster, 133 S. Ct. 1781, 1786 (2013)), reh'g denied, 134 S. Ct. 2835 (2014). A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 1702.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "unless objectively unreasonable in

light of the evidence presented in the state court proceeding." Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

### 4. Pro Se Status

Slide "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). However, in light of Slide's pro se status, the Court construes his submissions liberally and interprets them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). This liberal interpretation of the petition "does not exempt a party from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

### B. Claims for Relief

As stated above, Slide seeks habeas relief on six separate grounds: (1) the trial court erred by failing to make sufficient inquiries into Slide's guilt; (2) the sentence was harsh and excessive; (3) his guilty plea was unknowing, unintelligent, and involuntary; (4) he was deprived of effective assistance of counsel; (5) he was unaware of counsel's potential conflict of interest; and (6) counsel failed to advise him of his right to counsel of his own choosing.

For the following reasons, the petition is DENIED in its entirety.

### 1. Inquiries into Slide's Guilt Claim

Slide argues that he is entitled to habeas corpus relief because the trial court failed to make sufficient inquiries as to his guilt. In his habeas petition, Slide does not state why the trial court

was under a duty to make additional inquiries into his guilt.  However, in Slide's direct appeal papers, which were drafted by counsel, more guidance is provided.  (See Def.'s App. Div. Br. at 9-19.)  Accordingly, the Court liberally construes Slide's habeas petition to assert that the trial court had an obligation to make additional inquiries into Slide's guilt before sentencing him given his statements to Probation along with the other statements before the trial court suggesting that Slide desired to hire new counsel.  (See Amend. Pet at 7-8; Def.'s App. Div. Br. at 9-19.)

Prior to sentencing, Slide was interviewed by Probation and a PSR was generated, which stated in pertinent part:

> [T]he victim, Carlos Shaw, came 'charging' toward them. The defendant believed that perhaps he was looking for his son, and he noticed the man running at sort of an angle.  He was not sure that the man saw them, and the defendant said he also started running, and 'in the mix', they all panicked and as the defendant ran and spun around, the gun went off . . . The defendant described the crime as a 'freak accident'.  He said he panicked and he had no intention to take the man's life.

(See Def.'s App. Div. Br. at 14-15 (quoting PSR at 6).)  In Slide's brief to the Appellate Division, he argued that these statements raised concerns about the "intentionality" of his alleged crimes.

In denying this claim, the Second Department concluded that "the defendant's postplea statement to the Probation Department regarding the commission of the crime was insufficient to warrant withdrawal of his plea . . . the defendant's plea of guilty was knowing voluntary and intelligent."  Slide, 113 A.D.3d at 882 (internal citations omitted).

First, the Court notes that the trial court was not required to make additional inquiries into Slide's guilt under New York State Law.  According to New York state law, "where [a] defendant's recitation of the facts underlying the crime pleaded to clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea . . . the trial court has a duty to inquire further to ensure the defendant's guilty plea is knowing and voluntary."

13

People v. Lopez, 71 N.Y.2d 662, 666 (1988). However, where there is no evidence in a defendant's plea allocution that his plea is involuntary, "the state court [is] 'under no obligation to make a sua sponte inquiry into defendant's post plea assertion of innocence contained in the presentence report.'" Sandher v. New York State, No. 04-CV-2152, 2009 WL 3111755, at *4 (E.D.N.Y. Sept. 29, 2009). Here, Slide's post-plea statements do not rise to the level of a post-plea claim of innocence, and, in any event, under New York law, the trial court was not required to make additional inquiries before sentence.

Most importantly, "'federal habeas corpus relief does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Thus, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions". Estelle, 502 U.S. at 67-68. As such, for Slide to obtain habeas relief for this claim, he must demonstrate that the state court's failure to make additional inquiries into his plea "constituted a violation or misapplication of clearly established federal law as announced by the Supreme Court." Sandher, 2009 WL 311755 at *5. Slide has not provided any existing federal law mandating a sentencing court to make additional inquiries into a guilty plea due to post-plea statements such as those made by Slide, nor is the Court aware of any such law. See id. As is discussed at length below, the "constitutional touchtone by which all pleas are assessed is simply whether they were intelligently and voluntarily made." Id.; see also Willbright v. Smith, 745 F.2d 779, 780 (2d Cir. 1984).

In sum, the Court finds that the Second Department's decision rejecting Slide's claims about the trial court's alleged duty to make additional inquiries into his guilt was not contrary to, or an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. See 28 § U.S.C. 2254(d)(1).

### 2. Harsh and Excessive Sentence Claim

Slide contends that his sentence of twenty-five years of imprisonment followed by five years of post-release supervision is harsh and excessive.  (See Amend. Pet. at 7-8.)

It is well settled that an excessive sentence claim, such as Slide's, does not present a required federal constitutional issue when the received sentence "is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also Taylor v. Connelly, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014).  Under New York state law, the maximum sentence permitted for a violation of Manslaughter in the First Degree, a Class "B" Violent Felony, is an indeterminate term of twenty-five years' imprisonment.  N.Y. Penal Law §§ 125.20; 70.02. Additionally, under the New York Penal Law when an individual commits a felony and is sentenced to a determinate incarceration period, "periods of post-release supervision are **mandatory** and are **in addition to** the determinate sentence of incarceration imposed."  Van Gorden v. Superintendent, No. 03-CV-1350, 2007 WL 844901, at *10 (N.D.N.Y. Mar. 19, 2007) (emphasis in original).  Thus, Slide's sentence of twenty-five years' incarceration followed by five years of post-release supervision falls within what is permitted by applicable statute and does not present a federal constitutional issue.  Therefore, this ground fails on the merits.

### 3. Involuntary Guilty Plea Claim

According to Slide, his guilty plea has been rendered unknowing, unintelligent, and involuntary as the trial court deprived him of his right to legal representation of his own choosing. This claim was raised on direct appeal and the Second Department determined that Slide's "plea of guilty was knowing, voluntary, and intelligent."  Slide 113 A.D. 3d at 882.  Additionally, the Second Department found that Slide's "contention that his plea of guilty was not knowingly, voluntarily, and intelligently entered is unpreserved for appellate review, since he did not move to

withdraw his plea on this ground prior to the imposition of sentence." Id. When rejecting this claim, the Second Department "expressly relied on a procedural default as an independent and adequate state ground," therefore this claim is procedurally barred from consideration. Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (quoting Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996)). Slide has not shown cause or prejudice, and has failed to allege any fundamental miscarriage of justice if this claim is not reviewed, as such he cannot overcome this procedural bar. See Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Additionally, the Court finds this claim to be without merit. It is well established that when considering the validity of a guilty plea, the Court is to consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). In other words, "[a] plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way,' and it is considered 'voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" Manzullo v. People of New York, No. 07-CV-744, 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988)). Therefore, a "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, mis-representation, or perhaps by promises that are by their nature improper." Bousley v. United States, 523 U.S. 614, 619 (1998) (internal alteration and citations omitted). Further, the "state court's determination of the voluntariness of a defendant's guilty plea is a factual issue that is entitled to a presumption of

correctness on habeas review." <u>Murray v. McGinnis</u>, No. 00-CV-3510, 2001 WL 26213, at *4 (S.D.N.Y. Jan. 10, 2001).

Here, though Slide claims that he was not represented by counsel of his own choosing, it does not follow that his guilty plea should be invalidated on habeas review. There is nothing in the record to indicate that Slide's plea was involuntary, unknowing, or unintelligent. At the plea hearing, Slide stated that he was pleading guilty of his own free will, that he understood the rights he was giving up by entering the guilty plea; and that he had consulted the guilty plea with his defense counsel. (Plea Tr. 4–10.) He then proceeded with a detailed factual allocution. (<u>Id.</u>) The Court also notes that to the extent Slide is arguing that his plea should be invalidated because he was denied counsel of his choosing, such an argument is utterly meritless. Notably, there is no evidence in the record suggesting Mr. Wilutis would have pursued any difference strategy on Slide's behalf. In sum, the Court finds that the state court's determination that the guilty plea was voluntary, knowing, and intelligent; is not contrary to or an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. <u>See</u> 28 U.S.C. § 2254(d)(1).

### 4. Ineffective Assistance of Counsel Claim

Slide claims that he was deprived of effective assistance of counsel as (1) Mr. Bassett failed to advocate for Slide to obtain new counsel; and (2) Mr. Bassett failed to make an application to withdraw Slide's guilty plea. (Amend. Pet. at 8-14.) The County Court of Suffolk County dismissed these same claims on the merits; stating in pertinent part "[i]t is also the Court's finding the defendant received the effective assistance of counsel. Mr. Bassett did indeed negotiate a favorable plea and sentence, especially in light of the prior conviction after trial . . . [t]he record

establishes that defense counsel provided meaningful representation as a whole." (Court Order Denying Def.'s 440.10 Mot. at 104 (internal citations omitted).)

As explained below, the state court's decision rejecting Slide's ineffective assistance claims was not contrary to, or an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. See 28 § U.S.C. 2254(d)(1).

### i.    Standard for Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his trial counsel's performance was so inadequate that his Sixth Amendment right to counsel was violated. See Strickland v. Washington, 466 U.S. 668, 690 (1984). Therefore, the petitioner must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 688). First, it must be demonstrated that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687). Next, a petitioner must show that he was prejudiced by said deficient performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010) (internal quotation marks and citation omitted).

Under AEDPA, federal courts must grant state courts substantial "deference and latitude" when considering claims for ineffective assistance of counsel already rejected at the state court

level.  Harrington v. Richter, 562 U.S. 86, 101 (2011).  Given this deferential standard, Slide's alleged errors by trial counsel do not rise to ineffective assistance of counsel.

ii.    *Failure to Advocate for Change of Counsel*

Slide argues that his trial counsel's failure to advocate for new counsel to be assigned constitutes ineffective assistance.  (See Amend. Pet. at 8-14.)  This claim is clearly meritless.

First, Slide fails to explain how Mr. Bassett's failure to advocate for new counsel was unreasonable.  As the record shows, Slide's trial counsel advanced a reasonable strategy throughout his representation and obtained Slide a reduced disposition, receiving a twenty-five year sentence and avoiding a potential life sentence.  His counsel's strategy was certainly reasonable considering the evidence against Slide.  As the Second Department stated, "the evidence was legally sufficient to support the convictions and that the verdict of guilt was not against the weight of the evidence."  Slide, 76 A.D.3d at 1110.  In this context, Slide has failed to show how failing to advocate for new counsel was an error of constitutional magnitude.

Additionally, Slide has not satisfied the second prong in Strickland—he has not demonstrated that he was prejudiced.

First, Slide is unable to show that had counsel made an application for the appointment of new counsel that the application would be successful.  When a defendant makes an application for new counsel to be appointed he must show "good cause" for substituting counsel "such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict".  Edwards v. Fischer, No. 00-CV-7929, 2002 WL 1225538, at *7 (S.D.N.Y. June 5, 2002) (quoting McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981)).  Conclusory statements of dissatisfaction with counsel's performance do not establish good cause for substitution.  People v. Garcia, 250 A.D.2d 421, 421 (1st Dep't 1998) (stating that "general complaints of dissatisfaction . . . were insufficient to

establish the existence of a breakdown in communication or a serious irreconcilable conflict.")

Further:

> Although a defendant has the constitutionally guaranteed right to be defended by counsel of his own choosing, this right is qualified in the sense that a defendant may not employ such right as a means to delay judicial proceedings. The efficient administration of the criminal justice system if a critical concern to society as a whole, and unnecessary adjournment for the purpose of permitting a defendant to retain different counsel will disrupt court dockets, interfere with the right of other criminal defendant to a speedy trial, and inconvenience witnesses, jurors, and opposing counsel.

Guzman v. Fischer, No. 02-CV-7448, 2003 WL 21744086, at *14 (Jul 29, 2003) (quoting People v. Arroyave, 49 N.Y.2d 264, 271 (1980)). Here, there is nothing in the record that shows a conflict of interest or a communication breakdown to satisfy the good cause requirement to replace Mr. Bassett so late in the representation of Slide.

Second, there is no evidence that had new counsel been assigned there was a reasonable probability that the outcome of the proceeding would have been different. Specifically, there is no evidence in the record: (1) indicating that Mr. Wilutis would have pursued any different strategy on Slide's behalf; or (2) establishing a reasonable probability that, with new counsel, Slide would have either not pled guilty or would have pled guilty pursuant to more favorable plea deal.

Thus, given the highly deferential standards in Strickland and AEDPA, this ineffective assistance claim fails.

### iii.    Failure to Make an Application to Withdraw Guilty Plea

Slide contends that trial counsel was constitutionally ineffective due to trial counsel's failure to move to vacate his guilty plea. (See Amend. Pet. at 8-14.) It is "absolutely clear that the choice to plead guilty must be the defendant's." Henderson v. Morgan, 426 U.S. 637, 650 (1976). However, there is no constitutional right to withdraw a constitutionally valid guilty plea. See

United States v. Williams, 23 F.3d 629, 634 (2d Cir. 1994). As discussed above, Slide's guilty plea meets the well-established test of being "a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill, 474 U.S. at 56. Further, Slide has not demonstrated that his counsel's failure to make an application to withdraw his plea was unreasonable, especially considering the absence of any viable alternative strategy and the evidence against Slide. Additionally, although Slide's initial conviction was reversed on appeal, the fact that Slide was found guilty in the first trial was an important factor for counsel to consider.

For similar reasons, Slide has also not satisfied the second prong of the Strickland test. Slide cannot show that had his trial counsel made the motion to withdraw his guilty plea that there is a reasonable probability that the trial court would have granted it. Under New York state law, "[t]he decision to permit withdrawal of a guilty plea is a matter within the trial court's sound discretion, and a hearing is required only where the record presents a genuine question of fact as to its voluntariness." People v. De Fabritis, 296 A.D.2d 664, 664 (3d Dep't. 2002). Additionally, "[w]here a defendant has been fully informed of the rights he is waiving by pleading guilty and proceeds to admit the acts constituting the crime, a subsequent protestation of innocence which is not substantiated by any evidence is generally insufficient to support a request for vacatur of the plea." People v. Paulk, 142 A.D.2d 754, 754 (3d Dep't. 1988). Considering the record of Slide's guilty plea, there is not a reasonable probability that the trial court would have granted a motion to withdraw the plea. Moreover, there is no evidence establishing a reasonable probability that, with new counsel, Slide would have either not pled guilty or would have pled guilty pursuant to a more favorable plea deal.

Again, given the highly deferential standards in Strickland and AEDPA, this ineffective assistance of counsel claim fails.

**5. Conflict of Interest Claim**

Slide states that at the time of his guilty plea he was unaware of an existing conflict of interest by his trial counsel, and as such he is entitled to habeas relief.

Slide provides no guidance in his habeas petition as to his trial counsel's alleged conflict of interest—thus the Court considers how the claim was framed in Slide's Section 440.10 Motion. There, through counsel, Slide argued that: "

> In defendant's case, it seems Mr. Bassett was reluctant to make the application on behalf of defendant to withdraw [his guilty plea], because the circumstances encompassing the withdrawal are interwoven with defendant's desire to change counsel, which would have placed him in a conflict of interest, because he would have been burdened with taking a position in the application – adverse to the defendant, and adverse to himself.

(Section 440.10 Mot. at 30.)  In its decision, the County Court of Suffolk County made no specific mention to Slide's argument regarding a conflict of interest, but the County Court denied the Section 440.10 Motion in its entirety, stating that the remaining arguments were without merit. (See Court Order Denying Def.'s 440.10 Mot., at 103-104.)

"A defendant's Sixth Amendment right to counsel includes a right to conflict-free representation." Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000) (quoting United States v. Rogers, 209 F.3d 139, 143 (2d Cir. 2000)).  An actual conflict of interest forms when "during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (quoting Cuyler v. Sullivan, 446 U.S. 335, 356 n. 3 (1980)).  Further, "[w]hen counsel is burdened by an actual conflict that adversely affected performance, the defendant is not required to demonstrate prejudice; prejudice is presumed." Armienti, 234 F.3d at 824.  In contrast, where a petitioner is claiming that a potential conflict of interest exists, the petitioner must still

prove that he was prejudiced as a result.  Armienti, 234 F.3d at 824; Strickland, 466 U.S. at 688.  Further, to demonstrate that counsel's conflict had an adverse effect on the representation, the petitioner must "demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."  United States v. Levy, 25 F.3d 146, 157 (2d Cir. 1994) (internal quotation marks and citation omitted).

Slide has failed to articulate any actual or potential conflict of interest.  Slide's conclusory statements that a conflict existed because Mr. Bassett allegedly would not have wanted to advocate for new counsel and for a withdrawal of the plea are without merit.  Slide cannot establish a conflict of interest, "simply by expressing dissatisfaction with his attorney's performance."  United States v. White, 174 F.3d 290, 296 (2d Cir. 1999).  Additionally, when a trial court has conducted "an error-free plea allocution, advocacy by trial counsel on behalf of the withdrawal motion would not have constituted a viable alternative defense strategy."  Clendinen v. Unger, No. 05-CV-7657, 2006 WL 2465176, at *9 (S.D.N.Y. Aug. 22, 2006).  Accordingly, the Court finds that the state court's decision rejecting Slide's conflict of interest claim was not contrary to, or an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts.

### 6. Counsel of Own Choosing Claim

Slide argues that he is entitled to habeas relief because trial counsel failed to advise him of his constitutional right to counsel of his own choosing.  As stated above, this argument was raised in Slide's Section 440.10 motion and the County Court determined that it was meritless as he "was granted ample opportunity to engage the service of Mr. Wilutis or any other attorney he may have desired."  (See Court Order Denying Def.'s 440.10 Mot. at 104.)

Certainly, a petitioner is protected under the Sixth Amendment right to assistance of counsel, which includes the right to a "conflict-free representation." United States v. Paone, 782 F.2d 386, 392 (2d Cir. 1986). However, "the Supreme Court has held that [the Sixth Amendment] does not guarantee an absolute right to the counsel of one's choosing even for those with retained counsel, a meaningful attorney-client relationship, or complete satisfaction with counsel's performance." Soltero v. Kuhlman, No. 99-CV-10765, 2000 WL 1781657, at *3 (S.D.N.Y. Dec. 4, 2000) (internal quotation marks and citations omitted). Therefore, "[i]n determining whether to allow a defendant to retain new counsel, the court must consider . . . the risks and problems associated with the delay, and whether substitutions would disrupt the proceedings and the administration of justice." Paone, 782 F.2d at 392.

Upon review of the record in this case, Slide was clearly aware that he could have sought new counsel if he so desired.[4] The Court provided Slide with opportunities to retain new counsel; including multiple adjournments for sentencing purposes. (First Sentencing Tr. 2-5.) During one of these adjournments, the sentencing court instructed Slide that if he was to retain new counsel he was required to do so by September 6 as to not further delay sentencing. (First Sentencing Tr. 5.) On September 6 the court inquired whether there was any objection to Slide being sentenced, to which counsel replied no. (Second Sentencing Tr. 2.) Further, the court asked whether Slide wished to say anything and Slide stated "I have nothing to say." (Second Sentencing Tr. 3.) There is nothing in the record from the trial record that supports Slide's contention that he was denied counsel of his own choosing or was not aware of his right to seek different counsel. Accordingly, this claim is without merit.

---

[4] Even if this claim is construed as an ineffective assistance of counsel claim, as discussed above, there is no evidence that an application for new counsel would succeed and even if new counsel was assigned, there is not a reasonable probability that the outcome of the proceedings would be changed.

### III. CONCLUSION

For the reasons stated above, Slide's petition is DENIED.  A certificate of appealability shall not issue because Slide has not made a substantial showing that he was denied a constitutional right.  See 28 U.S.C. § 2253(c)(2).  I certify that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal.  Coppedge v. United States, 369 U.S. 438, 444–45 (1962).  The Clerk of the Court is respectfully directed to mail a copy of this Order to the pro se petitioner and to close this case.

**SO ORDERED.**

Dated:  June 8, 2018
Central Islip, New York

_____
        /s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE